UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LAURA GARCIA**, an individual,

                Plaintiff,

vs.
                                        No. 2:13-cv-14362
                                        Hon. Gerald E. Rosen

**WELTMAN, WEINBERG & REIS CO.
OF MICHIGAN**, a Michigan Corporation,
and **CREDIT ACCEPTANCE
CORPORATION**, a Michigan Corporation,

                Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT CREDIT
ACCEPTANCE CORPORATION'S MOTION TO COMPEL
ARBITRATION**

**I. INTRODUCTION**

      In this consumer debt collection matter, Defendants have moved to compel arbitration based on the parties' underlying car loan agreement. Having reviewed and considered the parties' written submissions in support of and opposition to the motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the

1

Court's ruling on the motion.

## II. FACTUAL BACKGROUND

A.    **The Agreement to Arbitrate**

On February 17, 2003, Plaintiff Laura Garcia purchased a vehicle from an automobile dealership in Taylor, Michigan. (Ex. 1 to Def's Mtn., Dkt. # 11). Plaintiff financed this purchase by entering into a Retail Installment Contract (RIC) with the dealership. (*Id.*). Under the terms of the RIC, the dealership assigned all of its rights, title, and interest to Defendant Credit Acceptance Corporation for servicing and collection. (*Id.*).

As pertinent here, the front page of the RIC sets forth two specific paragraphs concerning its arbitration provision:

> **ARBITRATION NOTICE:** PLEASE SEE THE REVERSE SIDE OF THIS AGREEMENT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS AGREEMENT.
>
> **ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION NOTICE SET FORTH ON THE REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

(*Id.*). The back page of the RIC then sets forth the "Agreement to Arbitrate," which provides in relevant part:

> Any dispute, controversy or claim between Buyer, Seller and/or Seller's assignee, Credit Acceptance Corporation, or the

> employees, agents or assignees of the other, arising out of or in any way related to the Agreement, or any default hereunder . . . whether based on contract, an alleged tort or other legal theory, shall be fully resolved by binding arbitration.
>
> * * *
>
> Notwithstanding the foregoing, Seller and Seller's assignee Credit Acceptance Corporation retain the right . . . to enforce the monetary obligation of Buyer under the Agreement through judicial relief. Such judicial relief may take the form of a lawsuit. The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not constitute a waiver of the right to submit any controversy or claim to arbitration, including any counterclaim asserted in any judicial action, and including those controversies or claims arising from the exercise of any such judicial relief to the exercise of self-help remedies.

(*Id.*).

### B. Plaintiff's Default and Defendants' Debt Collection Efforts

In April 2007, Defendant Weltman, Weinberg & Reis obtained a judgment on behalf of Credit Acceptance Corporation against Plaintiff in the 33rd District Court of Michigan relative to her default under the RIC. (Plf's Compl., Dkt. #1, at ¶¶ 6-7). Weltman filed various garnishments in an attempt to satisfy this judgment. (*Id.* at ¶¶ 8-11). On September 28, 2012, the 33rd District Court suspended the garnishments and required that Plaintiff make monthly installment payments beginning in November 2012. (*Id.* at ¶ 11; Ex. B to Plf's Resp., Dkt. # 14-3).

Plaintiff mailed the November 2012 payment to Weltman. (Plf's Compl., Dkt. #1, at ¶ 12). Later on in November, a new firm representing Credit

3

Acceptance Corporation, Weber & Olcese, substituted in as counsel for Weltman in the 33rd District action. (*Id.* at ¶ 13). Based on this substitution, Plaintiff then mailed her December 2012 payment to Weber & Olcese. (*Id.* at ¶ 14). Weber & Olcese returned Plaintiff's check, indicating that it had returned her file to Credit Acceptance Corporation and advising Plaintiff to contact Weltman. (*Id.* at ¶ 15). Plaintiff contacted Weltman, which told Plaintiff that it also no longer had her file and directed her to call Credit Acceptance Corporation. (*Id.* at ¶ 16). So Plaintiff called Credit Acceptance Corporation. A representative informed her that "she couldn't help her" because Credit Acceptance Corporation "did not know to whom she should send the payments or to what [law] firm her case was resassigned." (*Id.* at ¶ 17). Based on these calls, Plaintiff stopped making her payments. (*Id.* at ¶ 18). Several months then passed until September 2013, when she received a tax garnishment dated August 8, 2013 that Weltman filed on behalf of Credit Acceptance Corporation. (*Id.* at ¶ 19; Ex. A to Plf's Resp., Dkt. # 14-2). Plaintiff called Weltman, and was told "she needed to bring the account current and pay $1,000.00." (Plf's Compl., Dkt. # 1, at ¶ 20).

Plaintiff commenced this instant litigation shortly thereafter. Count I asserts that Weltman violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, when it "fail[ed] to disclose that it had returned as counsel for [Credit Acceptance Corporation] and that Plaintiff should tender her checks to it,"

4

as well as when it subsequently "default[ed] her on her court ordered payment plan." (*Id.* at ¶ 25). Count II claims that both Defendants violated the Michigan Regulation of Collection Practices Act (MRCPA), M.C.L. § 445.251 *et seq*, by knowingly misinforming Plaintiff as to whom she should remit payment and garnishing her Michigan tax refund. (*Id.* at ¶¶ 31-35).

Credit Acceptance Corporation has now moved to compel arbitration based upon the Agreement to Arbitrate (Def's Mtn., Dkt. # 11), which Weltman joins. (Dkt. # 12). Plaintiff argues that arbitration is not appropriate for two reasons: (1) the copy of the RIC attached by Credit Acceptance Corporation in support of its motion is illegible; and (2) Credit Acceptance Corporation waived its right to arbitrate by participating in the underlying action in the 33rd District Court. As set forth below, Plaintiff's arguments do not overcome the strong presumption in favor of arbitrability, and the Court therefore GRANTS Credit Acceptance Corporation's Motion.

### III. DISCUSSION

**A. Applicable Standards**

"The Federal Arbitration Act . . . provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450-51 (6th Cir. 2005) (citing 9 U.S.C. § 2). It

is well-settled that there is a strong federal policy in favor of arbitration: "When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (citation omitted). The Sixth Circuit has set forth a four-factor inquiry for examining a motion to compel arbitration:

> [W]hen considering a motion to stay proceedings and compel arbitration under the [Federal Arbitration] Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (citation omitted).

B.  **Arbitration is Appropriate**

    1.  **The parties have a valid arbitration agreement**

As an initial matter, the Court easily concludes that the parties have a valid arbitration agreement. Plaintiff's sole opposition on this point is that the copy of the RIC attached to Credit Acceptance Corporation's Motion was "illegible."

6

(Plf's Resp., Dkt. # 14, at 7-8).[1] In reply, Credit Acceptance Corporation attached a more legible copy of the RIC, an affidavit by its custodian of records attesting to the copy's authenticity, and an email exchange with Plaintiff's counsel providing him with an electronic copy of the RIC. (Exs. A-D to Def's Reply, Dkt. # 15). Upon review of these documents, the Court is more than satisfied that the RIC contains a valid arbitration agreement.

> **2.     The scope of the arbitration agreement covers Plaintiff's claims**

As Plaintiff is resisting arbitration, she "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolf*, 531 U.S. 79, 91 (2000). Plaintiff has raised *no* argument as to why her claims under the FDCPA and MRCPA are unsuitable for arbitration. Moreover, given the breadth of the Agreement to Arbitrate, she cannot. It provides that "*[a]ny* dispute, controversy or claim between Buyer, Seller and/or Seller's assignee, Credit Acceptance Corporation, or the employees, *agents* or assignees of the other, *arising out of or in any way related* to the Agreement, *or any default hereunder* . . . whether based on contract, an alleged tort or other legal theory, shall be fully resolved by binding arbitration." Accordingly, the Court concludes that Plaintiff's FDCPA and MRCPA claims -- which arise out of Plaintiff's default under the RIC and Defendants' subsequent efforts to collect the outstanding debt --

---

[1] She does not, for example, contend that she did not sign the RIC or that other contractual defenses exist.

are within the Agreement to Arbitrate's ambit. *Highlands*, 350 F.3d at 577 ("Where the arbitration clause is broad, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.") (citation omitted); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 960-61 (N.D. Ohio 2009) (construing arbitration clause in another retail installment contract matter with Credit Acceptance Corporation -- "any dispute 'arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract . . . shall be fully resolved by binding arbitration'" -- to cover analogous debt collection practice and consumer protection claims under Ohio law).[2]

### 3. Congress did not intend for FDCPA claims to be nonarbitrable

The Court now turns to the third, and in this case, last factor:[3] Whether Congress intended FDCPA claims to be nonarbitrable. "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Here, Plaintiff has neither raised the issue of congressional intent nor presented any evidence that Congress intended FDCPA

---

[2] There is no disputing that Plaintiff's claims against Weltman, an agent of Credit Acceptance Corporation, also fall within the scope of this agreement.

[3] Because all of Plaintiff's claims are subject to arbitration, there is no need to examine the fourth factor -- whether a stay is appropriate.

claims to be nonarbitrable and has therefore not satisfied her burden. *See also Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 730 (E.D. Va. 2012) ("[T]here is no reason to believe . . . that Congress meant to preclude arbitration in the circumstances of the case [involving a FDCPA claim]."); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (S.D. Ohio 2008) ("Congress did not intend FDCPA claims to be non-arbitrable. Courts routinely permit arbitration of such claims.").

In sum, the Court finds that Plaintiff's claims in this instant litigation are subject to arbitration.

**C.  Credit Acceptance Corporation did not waive its right to arbitrate this matter**

Even if claims are clearly subject to arbitration, a party's conduct may waive its ability to compel arbitration. "A party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (citations and internal quotations omitted). "[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred.'" *Id.* (citation omitted); *see also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) ("Though we have declined to

9

sharply define what conduct suffices [to establish that a party acted inconsistent with its right to arbitrate], it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate. *The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns.*") (citation omitted and emphasis added). Here, Plaintiff claims that Credit Acceptance Corporation "waived the agreement by filing a lawsuit against Plaintiff in state court and obtaining the underlying judgment and later litigating Plaintiff's objections to collect upon the judgment." (Plf's Resp., Dkt. #14, at 8). The Court disagrees.

**1. Credit Acceptance Corporation did not take any action completely inconsistent with its right to arbitrate Plaintiff's claims**

At first blush, Plaintiff presents a colorable argument that Credit Acceptance Corporation's participation in the prior state litigation was completely inconsistent with its right to arbitrate Plaintiff's claims. This is in large part due to the Agreement to Arbitrate's breadth, which covers "[a]ny dispute, controversy or claim . . . arising out of [the RIC], or any default hereunder." Credit Acceptance Corporation's collection lawsuit against Plaintiff was most certainly a "dispute, controversy or claim" arising out of her defaulting on her obligations under the RIC.

The problem with Plaintiff's argument resides in the details of the

10

Agreement to Arbitrate. The very next paragraph -- which Plaintiff conveniently omits -- expressly permitted Credit Acceptance Corporation to file its state court collection action *without* waiving its right to arbitrate:

> Notwithstanding the foregoing , . . . *Credit Acceptance Corporation retain[s] the right . . . to enforce the monetary obligation of Buyer under the Agreement through judicial relief.* Such judicial relief may take the form of a lawsuit. *The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not constitute a waiver of the right to submit any controversy or claim to arbitration*, including any counterclaim asserted in any judicial action, and *including those controversies or claims arising from the exercise of any such judicial relief to the exercise of self-help remedies.*

To be sure, the Sixth Circuit has cautioned against a finding that a "no waiver" clause is outcome-determinative when evaluating whether a party's conduct waived its right to contractual arbitration. *Johnson*, 680 F.3d at 717 (citation omitted). "This makes sense because to allow the 'no waiver' clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings and allow parties to test the water before taking the swim by delaying assertion of their right to arbitration until the litigation is nearly complete." *Id.* at 717 (alterations and quotations omitted). Rather, a court must undertake the "ordinary analysis" discussed above as to whether a party took steps inconsistent with an arbitration agreement. *Id.*

It is clear that Credit Acceptance Corporation's suit against Plaintiff to

enforce her monetary obligations under the RIC was not clearly inconsistent with the terms of the Agreement to Arbitrate. First, though not outcome-determinative, the Agreement to Arbitrate's express language allowed Credit Acceptance Corporation to file a debt collection lawsuit *without* waiving its arbitration rights. Stated differently, Credit Acceptance Corporation's acts were *consistent with the terms of the Agreement to Arbitrate*. Second, the issues at play in the state court litigation -- did Plaintiff breach the RIC and was Credit Acceptance Corporation entitled to enforce a judgment -- are fundamentally different from Plaintiff's unfair debt collection practice claims under the FDCPA and MRCPA. Numerous courts across the country have found that commencing a separate debt collection lawsuit does not, on its own, waive the right to arbitration. *See, e.g., Davisson*, 644 F. Supp. 2d at 957 (Credit Acceptance Corporation's filing of a debt collection action in state court under similar arbitration agreement did not waive its right to arbitrate the debtor's counterclaims arising under analogous debt collection practice and consumer protection statutes under Ohio law); *see also Hodson*, 531 F. Supp. 2d at 831 (rejecting argument that creditor waived its right to arbitrate a debtor's FDCPA claim arising out of the creditor's successful collection actions in state court and the garnishment of the debtor's wages); *Fidelity Nat. Corp. v. Blakely*, 305 F. Supp. 2d 639, 642 (S.D. Miss. 2003) (similar); *Schwartz v. CACH, LLC*, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014) (similar); *Morrow v. Soeder*,

2006 WL 2855024, at *3 (E.D. Mo. Oct. 3, 2006) (similar); *Fields v. Howe*, 2002 WL 418011, at *7-8 (S.D. Ind. March 14, 2002) (similar); *cf Kennedy v. Homecomings Fin. Network*, 2006 WL 2983019, at *3 (E.D. La. Oct. 17, 2006) (no waiver where arbitration agreement expressly carved out the defendant's ability to file foreclosure actions).

Plaintiff did not present any authority suggesting that commencing and participating in a separate state court debt collection action that was expressly contemplated by an arbitration agreement waived a creditor's right to arbitrate unfair debt collection practice claims arising out of the creditor's allegedly improper conduct during and subsequent to the state court proceedings.[4] Nor could this Court's own research locate any such authority, which is not a surprise given the strong preference towards arbitration. Indeed, holding otherwise would vitiate the core tenant of the Federal Arbitration Act: "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced *according*

---

[4] In addition to citing *Johnson*, Plaintiff cites to *Dean vs. Draughons Junior College, Inc*, 2012 WL 3308370 (M.D. Tenn. Aug. 13, 2012), for the proposition that "a party can waive the right to arbitrate otherwise arbitrable claims based on its participation in litigation." (Plf's Resp., Dkt. # 14, at 8). *Dean* is inapposite. First, it addressed whether the sole act of removing an action to federal court waives the right to enforce an arbitration agreement. 2012 WL 3308370, at *2-3. It did not examine the factual scenario presented here. Second, the *Dean* Court held that the Defendants *did not* take any action that was "completely inconsistent" with the arbitration agreement because they "filed the instant Motion to Compel Arbitration only one week after removing the action . . . , have not filed an Answer, participated in discovery, or engaged in court-supervised settlement discussions." *Id.* at *3.

*to their terms.*'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (emphasis added). Here, Plaintiff filed this instant litigation and Defendants promptly moved to compel arbitration. There was no action inconsistent with the Agreement to Arbitrate in this matter.

### 2. Plaintiff has not incurred prejudice

Even if Credit Acceptance Corporation's actions could be construed as inconsistent with the Agreement to Arbitrate, Plaintiff cannot show that she incurred actual prejudice *as a result of Credit Acceptance Corporation's delay in requesting arbitration.* In *Johnson*, the Sixth Circuit described the types of prejudice necessary to not enforce an arbitration agreement:

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense. Prejudice can also be found where a party has gained a strategic advantage by obtaining something in discovery that would be unavailable in arbitration.

680 F.3d at 719-20 (internal citations and quotation marks omitted). Plaintiff does not argue that compelling this matter to arbitration would result in relitigating issues that Credit Acceptance Corporation lost elsewhere. In fact, she cannot -- Credit Acceptance Corporation *won* against Plaintiff in state court *on different issues.* Nor does Plaintiff claim that Defendants "obtain[ed] something in discovery" to their advantage. Instead, Plaintiff contends that she "incurred actual

prejudice in the form of a judgment against her and the garnishment of her funds." (Plf's Resp., Dkt. # 14, at 9).

Plaintiff's argument fails to recognize that there must be a link between the failure to move for arbitration and her injuries; she must point to prejudice that was *caused* by a delay in moving for arbitration. The injuries to which she points -- a state court judgment and the resulting garnishments -- were caused not by a failure to timely move for arbitration, but rather arise out of an independent cause of action relating to *her* default. Stated differently, her "injuries" are associated with the outcome of the debt collection lawsuit and not with proceedings related to her claims under the FDCPA and the MRCPA. Plaintiff's alleged "prejudice" falls well short of those cases finding that a significant delay or expense justified negating an arbitration agreement. *See, e.g., Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 340 (6th Cir. 2010) ("For more than two years before Defendants attempted to compel arbitration, Plaintiffs incurred the costs of active litigation in two federal courts. Plaintiffs have employed four attorneys, undergone extensive discovery, argued four summary judgment motions, and been subjected to a change in venue at Defendants' request. . . . Plaintiffs have suffered actual prejudice as a result of Defendants' delay.").

## IV. CONCLUSION

For all of the foregoing reasons,

15

  IT IS HEREBY ORDERED that Credit Acceptance Corporation's Motion to Compel Arbitration [Dkt. # 11] is granted.

  IT IS FURTHER ORDERED that Plaintiff Laura Garcia and Defendants Weltman, Weinberg & Reis Company of Michigan and Credit Acceptance Corporation are directed to proceed with arbitration of Plaintiff's claims pursuant to the terms of the Agreement to Arbitrate.

  IT IS FURTHER ORDERED that, in lieu of staying the proceedings, this case is dismissed without prejudice to the parties' right to move to re-open this case for entry of an arbitration award or for any other relief to which the parties may be entitled.

  **IT IS SO ORDERED.**


**Dated: April 30, 2014**       <u>s/Gerald E. Rosen</u>
                 Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 30, 2014, by electronic and/or ordinary mail.

                <u>s/Julie Owens</u>
                Case Manager, (313) 234-5135